ISAAC COWAN *versus* DAVID WHEELER.

Where a bill in equity is founded upon a supposed trust in the defendant which he has not executed, the Court has no jurisdiction as a court of equity, unless it appears from the bill, that a trust, such as is cognizable, under our statutes, by this Court, in fact existed between the parties.

Trusts, properly so called, do not result from a mere breach of contract, for which the remedy is to be sought by a suit at common law for damages; nor do they embrace cases of conditional contracts of sale, where if the person on whom the performance of the condition rests, fails to perform, without fault on the other side hindering him therein, he is without remedy, although he may have proceeded therein nearly to its completion, unless it be of some matter not of the essence of the contract. Equity cannot aid him to compel the other party to perfect the sale upon terms other than those agreed on. He cannot in any sense of the word be held to be a trustee, so long as he is not in fault.

If the person alleged to be a trustee has funds of the party, on whom the performance of the condition of the contract rests, in his hands for the purpose of performing the condition, it would be a virtual performance of it; and might be the foundation of a bill in equity to compel a specific performance of the contract; but such facts would not authorize the Court to take cognizance of the matter as a trust. A refusal to perform would be but a breach of the contract.

If a letter of the defendant contains an admission that he holds a certain farm as security, with an intimation, merely, that if he can be paid what is due to him from the plaintiff, and be cleared from the liabilities he was under for him, within any reasonable time, he should be willing to convey the property as the plaintiff desired; this does not, in legal contemplation, amount to an admission of holding the estate in trust.

This Court, sitting as a court of equity, cannot compel a party to consent to a new trial of an action decided in the same Court at law.

THIS was a bill in equity, and came before the Court upon a demurrer thereto.

The abstract of the bill, *Isaac Cowan* v. *David Wheeler,* was as follows.

"Charges, that on the fifth day of December, 1831, plaintiff contracted to purchase a farm in Sidney, called the Barrows farm, to pay $200 down, and to secure the further sum of $814, by notes of hand; that he applied to said Wheeler, who was the brother of Ellis, the wife of said Cowan, to unite with him in giving said notes.

Cowan *v.* Wheeler.

"That the plaintiff paid from his own funds the $200, but desiring to make Wheeler secure, he did, on the fifth day of December, cause an absolute deed to be made of the said farm to the said Wheeler and his heirs, and the said Wheeler, thereupon, and the plaintiff, signed the three notes, to be given therefor for $814, and on the same day Wheeler executed an instrument as follows : —

"Whereas I this day received of John Barrows, Jr. a deed of the farm in Sidney now occupied by Isaac Cowan, passing to Elisha Barrows, Jr. three notes of hand signed by myself and the said Isaac Cowan, for the sum of eight hundred and fourteen dollars.

"The condition of this obligation is, that, provided the above named Isaac Cowan, or his representatives, shall well and truly pay, or cause to be paid, said notes with all interest and costs, I agree and bind myself to convey to Ellis Cowan, by my deed, in manner and form, as conveyed to me by said Barrows, the said deeded farm, with all privileges and appurtenances then belonging to it.                     "David Wheeler.

"Augusta, Dec. 5th, 1831."

"The plaintiff avers, that he paid all said notes, except the last, which with interest and cost, being $356, was paid by Wheeler in November, 1833. And the plaintiff further avers, that although this sum was paid by Wheeler, he did at the time, and has ever since, in the judgment and belief of the plaintiff, held funds in his hands, belonging to the plaintiff to an equal or greater amount. That Wheeler having assumed other liabilities for the plaintiff, he did not demand the execution of the trust. That in May, 1834, Wheeler being involved in two lawsuits, arising from his transactions with the plaintiff, who was then in the occupation of the Barrows farm, as a recognition of the said Wheeler's legal title thereto, an instrument was executed under the hands and seals of said Wheeler and said plaintiff, whereby Wheeler leased said farm to said plaintiff for one year, and the plaintiff covenanted to pay therefor $100, and all taxes. That in May, 1835, by an indorsement on said instrument it was extended another year.

That said suits having terminated in favor of Wheeler, no further renewal was exacted, and although the plaintiff occupied said farm up to and including 1840, the said Wheeler never claimed rent, until after the plaintiff had commenced a suit at law against him. That although said Wheeler, was well aware that he held said farm in trust, except so far as he might have a lien thereon for security, on the fourth of April, 1840, by writing signed by him and the plaintiff, did agree to submit all claims, payments and liabilities, on account of real estate, claims in equity and personal accounts, to Timothy Boutelle and John Potter; and by another writing by them signed, they agreed to submit to two disinterested persons, to be agreed on, all accounts, claims and demands, in equity, or otherwise, and to meet at John Potter's office to choose the referees and proceed to business, March 31, 1841.

"And the plaintiff avers, that to secure to himself and family his just rights in said farm he was, and always has been anxious, that the transactions between him and Wheeler should be fairly settled, and that he continued to press the said Wheeler to cooperate in such settlement, and on the day of its date, the plaintiff received from said Wheeler the following letter : —

"Waterville, Oct. 3, 1841.

"Mr. Cowan, Dear Sir, In consequence of having company, I was not able to be at your house as contemplated when I saw you, according to your memorandum, and if I understand you rightly, there are certain points, which you wish to be embodied in the rule, (if we have one) the responsibility of which I do not think I ought to assume, being inseparably connected in the same with others, and which I consider unequivocally settled years ago. With regard to the other points, I think they may be settled between ourselves. When I can be cleared of your liabilities, on which I am responsible, and paid what is due me, I should have no objection of deeding the Barrows farm to you or Newton, or any body else you may name, if that adjustment can be made in any reasonable time.

"Yours, very respectfully, David Wheeler."

" And the plaintiff avers, that though he had failed to comply literally with the terms, on which said farm was to be conveyed to his wife, Ellis, yet the foregoing letter contains a new declaration of trust in his favor, grounded on equitable considerations, recognizing what justice, equity and good conscience required at his hands. And the plaintiff avers, that according to his best judgment and belief, it would turn out, upon a just and equitable settlement between them, that there was at that time, had been long before, and ever since has been, a balance in the hands of Wheeler, arising from the funds of the plaintiff more than sufficient to clear all liabilities by him assumed, and reimburse all payments by him made for the plaintiff, including what he has paid on account of the Barrows farm. That ever since the date of that letter, and long before, the plaintiff has been ready and desirous, and has repeatedly offered to make a fair settlement with the said Wheeler, but without effect.

" Wherefore he prays, that the Court may order and decree, that such settlement should be made, and if it should thereupon appear, that said Wheeler is entitled to any further payment on account of said Barrows farm, or otherwise, the plaintiff is ready and hereby offers to pay the same. And he further prays, that the Court would decree that, upon such payment, or without it, if he has already been paid, the said Wheeler should convey said Barrows farm to the plaintiff, as in equity and good conscience he is bound to do.

" And the plaintiff further avers, that with a view to hasten such settlement, he did on the fifth of October, 1841, commence a suit against said Wheeler, upon the balance of an account annexed, which is now pending in this Court; that Wheeler filed an account in offset, claiming among other things seven hundred dollars, for rent of the Barrows farm seven years, thus taking advantage of his legal title, and of his lease aforesaid, against equity and good conscience, to harrass and oppress the plaintiff. And the plaintiff avers, that the rent, use and occupation of said farm is necessarily connected with the trust aforesaid, and cannot be dissevered therefrom without great

injustice. And because in the trial at law, the jury were not competent to take jurisdiction of the trust aforesaid, they allowed his claim for said rent, whereby a verdict was returned for the defendant, instead of the plaintiff.

"And to the end that justice may be done, the plaintiff prays, that the Court would enjoin upon said Wheeler to consent to a new trial in said cause, and to withdraw the said item from his account in offset, that the trust aforesaid, with its proper incidents may by duly inquired into, and disposed of under this bill in equity.

"And the plaintiff prays, that said Wheeler may be required to answer under oath, and for such a decree, as to law, justice and equity may appertain, and for his costs.

"And he avers, that he brings this bill because he has not a plain, adequate and complete remedy at law."

Abstract of the demurrer.

"To this bill, the defendant demurs, and for cause of demurrer shows, that the writing, purporting to have been signed by this defendant, under date of the third of October, 1841, as set forth in the plaintiff's bill, is not in law a declaration of trust; and so the plaintiff has not by his bill made out any case, to entitle him to a decree, with the usual formal averments and allegations."

To this there is a formal joinder in demurrer.——

The case was argued in writing.

Opening argument for the defendant by

*Wells.*— This is a bill in equity, to which a demurrer has been filed, and in which the plaintiff prays a conveyance of the Barrows farm to *himself;* and that a new trial may be granted in a suit at law of said Cowan against the respondent, in whose favor judgment has been rendered.

1. The agreement to convey to "Ellis Cowan," was made on Dec. 31, upon condition of payment of the notes, with all interest and costs. The notes have never been paid by Cowan, but in 1833, were paid, as the bill admits, in part by Wheeler. Here then is an insuperable bar to the bill. The condition has not been performed.

But said Cowan alleges, " that according to his best knowledge and belief," Wheeler at that time had funds in his hands to an amount equal to what he paid. Men of lively imaginations are generally too sanguine in their belief. This belief is too general and indefinite. There must be full and entire evidence of the performance of the condition. A mere vague belief of it is not satisfactory. The plaintiff should state, in what manner, and what kind of funds, Wheeler held, whether they consisted in money, choses in action, real or personal property; to enable the Court to judge of the performance of the condition. The bill further alleges, that Wheeler, having assumed " other liabilities," Cowan did not demand the execution of the trust. These " other liabilities" must have constituted a good reason for the suspension of his demand. They remain in full force at this time. The action referred to in the bill, embraced every thing, which the plaintiff had against Wheeler, and among other items, Cowan charged Wheeler with a note for $200, which Wheeler gave him, for money paid by Cowan to Barrows for the Barrows farm, as will be seen by the report of the auditor in said action. The charging Wheeler with this $200, looks very much, as if Cowan had no claim upon the farm, and was only desirous to recover back what he had paid. The fact of giving the note for this money indicates the farm to be Wheeler's property. But the balance recovered by Wheeler shows conclusively, that Cowan was his debtor to a large amount. Notwithstanding the jury, as can be proved, allowed to Wheeler for the rent claimed, nothing more than the interest, during the lease, on the money paid by him towards the farm, still there was a balance due Wheeler. Wheeler, therefore, by Cowan's own showing, has paid $556 principal, together with the interest on the whole, for some twelve years, amounting to a sum probably equal to the value of the farm. If it should become necessary, all the payments can be shown. By referring to the action at law, Cowan makes it a part of his bill, and the Auditor's report is a portion of the proceedings. But independently of the $200, the bill admits a note of $356, paid in Dec. 1833,

which, at annual interest, would be more than double that sum, and the action at law shows that no part of this sum has been paid. It is not pretended that it has been paid. The condition therefore has not been performed, and the entire ground for the prayer of the bill fails.

2. And Cowan admits that " he had literally failed to comply with the conditions." How long time shall he have to revive his claim ? He must do what he ought to do in a reasonable time. The money paid in Dec. 1833, was due, and Cowan, by leaving it to be paid by Wheeler, lost all claim, which he or his wife had upon the farm. Cowan was to pay to perform the condition, and that must be when the notes were due ; by lying by, and compelling Wheeler to pay, the right was lost. But if this were otherwise, the length of time in which the claim has rested, since Wheeler paid the money, must constitute a sufficient answer. Although this transaction related to real estate, it was a mere promise to do an act, and the right of action is barred in six years from the breach ; which must be considered as having taken place, when the money was paid by Wheeler. Where courts of law and equity have concurrent jurisdiction, and the action is barred at law, it is also in equity. *Kane* v. *Bloodgood,* 7 Johns. Ch. R. 90, 118. And this is open to objection on demurrer. Story's Equity Pl. § 503, and note 4. Here the party entitled to a bill, has also the right to bring an action of assumpsit. Also, if there are laches, and demands are stale, where there is no limitation, courts of equity refuse to interfere. Story's Com. on Equity, vol. 2, p. 735 and 736.

3. The lease of 1834 and renewal in 1835, afford full evidence of all abandonment of any expectation on the part of Cowan of ever performing the condition. These acts are solemn admissions, under his hand and seal, that the title was in Wheeler. At all events they show, that the condition had not then been performed, and nothing since has taken place showing a performance.

4. The letter of Oct. 3, 1841, can have no effect upon this case. The agreement, previous to the letter, to refer is revoc-

able, leaving the party injured to his action. It is a transaction between Wheeler and Cowan, in which Ellis has no part. Ellis is not a party to any thing contained in the letter, which refers to the previous arrangements in relation to a settlement. Cowan cannot tack this letter-to him, on to an agreement to convey to his wife, and thereby claim a trust to himself. If any trust belonged to her by the agreement of Dec. 1831, it still remains her property, and he cannot take it to himself, and consequently cannot maintain this bill. Moreover there is no consideration for any new trust. Besides, the adjustment, to which Wheeler alludes in the letter, is to be made by the parties themselves. A person might be very willing to convey upon an adjustment, which he would make, when he would not consent to do it, upon an adjustment to be made by others acting as referees. Wheeler has never been cleared of his liabilities and paid what is due him; and there is no allegation that such is the fact, except the mere "judgment and belief" of Cowan. Wheeler does not say he would convey to any one, but barely says, he "should have no objection." The amount of it is, if Cowan would do what Wheeler thought he ought to do, Wheeler would have no objection of deeding to Isaac or Newton. Cowan has never done any thing, except to harrass Wheeler with lawsuits.

This letter makes no allusion to the agreement of Dec. 1831, neither confirms it, nor revives it. The tenor of it appears to indicate, that neither party placed any reliance upon it.

5. The request, that the Court would enjoin upon Wheeler to consent to a new trial, in the suit at law, is what the Court has no power to grant. It is *res judicata*, and cannot again be opened to contestation for any causes alleged in this bill. *Emery* v. *Goodwin*, 13 Maine R. 14; *York Man. Co.* v. *Cutts*, 18 Maine R. 210.

Argument for the plaintiff by

*N. Weston* — The defendant by his demurrer, avers that we have no case, upon our own showing. Upon the demurrer all our averments, which are well pleaded, and whatever is fairly deducible from them, are taken to be true, and no coun-

ter averments or proof whatever are admissible. Of this poor compensation for inevitable delay, the opening counsel has sought to deprive us, by taking the extraordinary course of denying some of our averments, and of endeavoring to avoid others, by averments of his own. The Court are to decide the question now raised upon the bill and demurrer, and no other matter can be foisted into the case. We have averred, that we paid all the notes, given for the Barrows farm, except the last. This the opening counsel denies in argument, although admitted by the demurrer. It is sufficient at present to say, that whatever controversy may be raised upon that point we are prepared to meet, whenever the case comes to proof. We have averred, that when the defendant paid the last note given to Barrows, he had in his hands our funds, to an equal or greater amount. I suppose the counsel would be understood to object to this averment as not well pleaded, because the plaintiff has declared it to be true, *in his judgment and belief.* This would have been implied, if it had not been stated. The plaintiff having been privy to the whole subject matter, did not speak at random. He had materials upon which to form his judgment, and when he distinctly charges a matter against the defendant, upon his judgment and belief, if that is a material allegation, he has a right to an answer, and if not regularly denied, it is admitted. In a demurrer to evidence, all that a jury *might* find from the proof is taken to be true. So is what the plaintiff avers, and none the less so because the ground of the averment is alleged to be his judgment and belief.

With a view to lay a foundation to ask for an injunction upon the defendant, we have made certain averments, in respect, to a suit at common law, now pending between the parties, upon which judgment is not yet rendered. All these averments that are well pleaded, are admitted by the demurrer. The counsel does not object to their form, but he denies some of them, and goes on to state certain calculations, at variance with our averments, which he says were made by the jury. If he would insist, that what we have set forth upon this mat-

ter is false, let him deny it regularly, and we are ready to join the issue and to meet it. But we do trust, that upon demurrer, we are not bound to prove our averments, otherwise that course of proceeding, besides being an unnecessary delay of justice, which is unavoidable, if the defendant will resort to it, has the effect to controvert at once both the law and the fact of our case.

We take it for granted then, that the question is, whether our bill on its face presents a case, calling for equitable relief.

The Court are possessed of our written motion to amend, so that Ellis Cowan, the wife of Isaac, may be received as a party, by being made a plaintiff with her husband. If the Court deem this necessary, as the defendant has delayed us, as we think unnecessarily by his demurrer, as the omission of the wife as a party is not assigned as a cause of demurrer, and as the amendment will not delay the decision of the case, we hope and trust the Court will grant it without costs.

Taking our bill to be true, as admitted by the demurrer, does it present a case entitling the plaintiff to relief in equity ? A court of equity looks through form to the real nature of the transaction, upon which a controversy arises. The nature of the subject matter, upon which this bill is based, is sufficiently apparent. The plaintiff had contracted to purchase the Barrows farm, in December, 1831. He was to pay part of the purchase money down, and to give security for the residue. He made the cash payment, and to secure the other payments, he desired to obtain the name of the defendant, his brother-in-law. To secure *him* for signing the notes, the land was conveyed to the defendant, by the procurement of the plaintiff. Upon these facts, which are not controverted but admitted, the defendant held this farm, to secure him for what he had to pay on these notes.

The bill avers, that all the notes, except the last, were actually paid by the plaintiff. It further avers, that though the defendant paid the last, it was from the plaintiff's funds in his hands. No question is made as to the competency of the proof, whether in writing or not. The facts are admitted by

the demurrer. *Second Uni. Society* v. *Woodbury*, 14 Maine R. 281 ; *Batsford* v. *Keble*, 12 Vesey, 74.

Upon these facts, the defendant held the Barrows farm in trust for the plaintiff. And this independently of the instrument, executed by the defendant, December 5, 1831, promising to convey, upon the condition stated, to the wife of the plaintiff.

That was a mode of executing the trust, appointed by the plaintiff, who furnished the funds, and for whose benefit the trust must arise, upon the defendant's being secured, he holding for security only.

But if the trust was for the benefit of the appointee, and its terms are to be collected from that instrument, coupled with the preceding averments, as the defendant held for security, it is contended, that the time and mode of payment is not of the essence of the contract. The essence was, security and indemnity to the defendant for his undertaking to Barrows. Otherwise on the failure of the plaintiff to pay ever so small a part of either of the notes to Barrows, so that the defendant had to pay it, the plaintiff would forfeit the whole farm.

To show that time is sometimes not regarded in equity as of the essence of a contract, we cite *Radcliffe* v. *Warrington*, 12 Vesey, 325 ; *Hearne* v. *Tenant*, 13 Vesey, 287.

The bill avers, that the plaintiff made the cash payment and two thirds of the amount, for which credit was given, and that the defendant paid the other third. Holding as he did for security, will equity seize upon this, and subject the plaintiff as a penalty to the forfeiture of the whole farm ? If so, it is a misnomer to call it equity.

Equity undoubtedly requires, that upon payment or tender of what the defendant paid, he should convey the land to the plaintiff, or to his wife, his appointee. But if the defendant paid at the time from the plaintiff's funds, this was equivalent to a payment by the plaintiff's hand, and was in fact a literal performance of the condition, or the same thing. If the defendant paid from the plaintiff's funds, he paid as his agent. It was the plaintiff's payment. In this view of the facts, as

the purchase money came from the plaintiff's funds, and as the trust for the wife was of his appointment, if the plaintiff failed to perform in that mode, cannot the plaintiff base upon this failure, in connexion with the other facts, a claim to have the land conveyed to him, the defendant being secured and indemnified, never having in fact paid any thing from his own funds.

But if the trust appointed in favor of the wife is, notwithstanding the plaintiff furnished the funds, irrevocable, and the defendant liable under the instrument executed by him in December, 1831, if the court in that case are of opinion, that the wife should have been made a party, we trust that she may be received as such, under our motion to amend.

We apprehended, however, that upon the facts before referred to, the bill would lie for the plaintiff alone, and we did not join the wife, as it might turn out upon the proof, that the trust established might be one, which would not enure to her benefit.

. Assuming that the instrument of the fifth of December had lost its efficacy, and could not be enforced as a declaration of trust, because the condition had not been complied with, it would still be true upon the whole matter, that the defendant held the Barrows farm only as security. The lease set forth in the bill, was merely ancillary to the legal title, and does not change the nature of the trust, nor invalidate the fact, that the defendant held the farm, merely to secure him from loss, for liabilities he may have assumed for the plaintiff. And if written evidence of the trust thence arising was necessary, it is not wanting in this case.

It is not necessary, that a trust should be created in writing. It is sufficient, if proved under the hand of the party to be charged. *Foster* v. *Hale*, 3 Ves. 696 ; *Movan* v. *Hays*, 1 Johns. Ch. R. 342 ; *Steere* v. *Steere*, 5 Johns. Ch. R. 1. The precedent matter, showing that the defendant held the Barrows farm only as security, being confessed by the demurrer, no question is raised as to the competency of the proof. But if evidence in writing were necessary, it is supplied by the defendant's letter of the third of October, 1841. Indeed, with-

out the precedent matter, it is deducible from that letter, that he held that farm as security.

He expresses his willingness to convey the farm to the plaintiff, or to any appointee he might name, upon being cleared of the liabilities, he had assumed for the plaintiff, if the adjustment could be made in any reasonable time. This was in truth all we ever desired ; all we now desire. The demurrer admits, that we repeatedly offered to make this adjustment. It further admits, that there was at that time, had been long before, and up to the time of filing the bill, a balance of the plaintiff's funds in the defendant's hands, more than sufficient to clear his liabilities.

If the precedent matter admitted by the demurrer, the letter of October, and the admission by the demurrer, that he had a balance to clear his liabilities, and that we have pressed an adjustment, as proposed by the letter, does not make out a case for the plaintiff, it is difficult to conceive what would.

*Wells,* for the defendant, in reply, said, among other things, that the plaintiff admits in his bill, that he utterly failed to conform to the agreement of December 5 ; and he failed substantially and entirely. It was not a mere short coming in point of time, but a thorough and radical omission to fulfil on his, or his wife's part, the contract. But time is of the essence of contracts, and cannot be limited or extended to suit the views of any party to a contract. It would be a " misnomer to call it equity," if courts exercising equity jurisdiction, should make contracts for the parties.

The opinion of the Court, SHEPLEY J. concurring in the result only, was drawn up by

WHITMAN C. J. — The plaintiff's bill is founded upon a supposed trust in the defendant, which he has not executed. We must first ascertain whether a trust, such as is cognizable, under our statutes, by this Court, in fact existed between the parties. If not, the bill must be dismissed. The plaintiff, first, sets forth certain transactions which took place between himself and the defendant; and then avers, that they consti-

tuted a trust. He then sets forth a writing, of a subsequent date, in the form of a letter from the defendant, which he avers amounted to a declaration of trust on his part in reference to those former transactions. To the latter, as it would seem, from the abstract with which we have been furnished, the defendant demurs specially ; but neither answers, pleads or demurs to the former. Yet the cause has, in technical phrase, been set down for argument, upon bill and demurrer. This is clearly an irregularity. The first part of the statement, which the plaintiff avers amounted to a trust, unexecuted on the part of the defendant, should have been noticed by answer, plea or demurrer. We should be warranted in concluding, that the defendant, by such course of proceeding, intended to admit those allegations, which he has not seen fit to traverse ; or, in overruling the demurrer.

But the parties have proceeded in their arguments, without confining themselves at all to the point, which it would seem, they have seen fit particularly to put in issue, to the consideration of the case upon its general merits, as if the whole had been properly put in issue. Upon their having so done it may not be inexpedient for the Court, in the hope that an end may be put to further litigation, manifestly destined to be fruitless in the end, to suggest the impressions made upon our minds, in regard to the condition of the suit.

Trusts, properly so called, do not result merely from a breach of contract, the remedy in which cases is to be sought for by a suit at common law for damages ; nor do they embrace cases of conditional contracts of sale. In such cases it is for the person, on whom the performance of the condition rests, to be careful that no delinquency takes place on his part. If he fails to do so, without fault on the other side hindering him therein, he is without remedy ; unless it be in some matter not of the essence of the contract, although he may have proceeded therein nearly to its completion. Equity cannot aid him to compel the other party to perfect the sale upon terms other than those agreed upon. He cannot in any sense of the word, be held to be a trustee so long as he is not in fault.

In the case presented, the defendant was answerable, only, upon his contract, according to its terms. His contract is in writing. The Court has no power to vary its terms. His stipulation was, that, if the plaintiff paid certain notes of hand, as they might become due, he would convey a certain estate to the wife of the plaintiff. The bill admits, that the plaintiff did not pay the last of the notes, but that that one was paid by the defendant. Here then there was a breach of the condition, which at law, certainly, absolved the defendant from his obligation to make the conveyance.

But the plaintiff avers, that, at the time of the payment of that note, the defendant had, and ever since has had, "in the judgment and belief of the plaintiff," funds belonging to him to a greater or equal amount; but that, the defendant having assumed other liabilities for the plaintiff, he did not demand the execution of the supposed trust. It is, however, no where averred, that such funds were in the defendant's hands for the purpose of paying said note, nor of what they might or could have consisted. On the other hand, if there were any such funds in the defendant's hands, according to the plaintiff's own showing, they were suffered to remain there for a purpose other than for the payment of the note. If indeed the plaintiff had funds in the defendant's hands for the purpose of paying the note, it would have been a virtual performance of the condition ; and by instituting a process in equity, in conjunction with his wife, to compel a specific performance of the contract, the defendant might be compelled to make the conveyance. But such facts would not have formed a case, authorizing the Court to take cognizance of it, as a trust. The refusal to convey would be but a breach of an express contract.

As to the letter of the defendant, before referred to, it cannot be regarded as a declaration of trust. It contains no admission, that the defendant holds the estate in trust, properly so called. The admission, at the utmost, is, only, that he holds it as security ; with an intimation, merely, that if he can be paid what was due him from the plaintiff, and be cleared from the liabilities he was under for him, within any reasonable

time, he shall be willing to convey it as may be desired. This might, perhaps, be available to the plaintiff on a bill for specific performance, by way of showing a waiver on account of the want of punctuality of performance on the part of the plaintiff; but cannot amount to an admission of holding the estate in trust, in legal contemplation. To constitute a declaration of trust it should be such as that the party making it must be believed to have intended it as such. Loose and inadvertent declarations are not sufficient for the purpose. *Steere* v. *Steere,* 5 Johns. C. R. 1.

There is a statement in the bill concerning a verdict, which has been returned in a suit instituted by the plaintiff against the defendant, on an account, from which it is inferable, that much, if not all of the controversy between the parties, has, at the instance of the plaintiff, been fully litigated at law; and that the plaintiff was there found indebted to the defendant. If such were the case, there can be no re-examination thereof in equity.

But the plaintiff in his bill prays, that the Court would enjoin upon the defendant to consent to a new trial in the action at law, and that the defendant may be compelled to withdraw certain items in his account in set-off, viz. for the rent of the premises in question. This request is unprecedented and novel. It is that this Court, sitting as a court of equity, should compel a defendant to consent to the new trial of an action decided in the same Court, at law, when it has power at law to grant new trials at discretion, whenever it shall appear that, otherwise, injustice will be done. The bare statement of such a proposition cannot fail to make the impropriety of it manifest. If the plaintiff has attempted at common law to obtain a new trial, and has failed, he is without remedy in equity; if he has not, then, that appropriate course is open to him. In either case he cannot be relieved from the effect of that decision under this bill.

On the whole, it is clear, that this bill should be dismissed with costs for the defendant.